UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) |
| THIS DOCUMENT RELATES TO: | ) ) ) |
| International Union of Operating Engineers, Local No. 68 Welfare Fund, | ) M.D.L. No. 1456 ) ) CIVIL ACTION NO. 01-12257-PBS |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| AstraZeneca PLC, et al., | ) ) |
| Defendants. | ) ) |
| Civ. Action No. 04-11503-PBS | ) ) ) |

**MEMORANDUM AND ORDER**

April 14, 2006

Saris, U.S.D.J.

**I. INTRODUCTION**

Plaintiff International Union of Operating Engineers, Local

No. 68 Welfare Fund ("Local 68") filed this proposed class action

in the Superior Court of New Jersey against fifty-five named

pharmaceutical companies and three named physicians. Local 68

alleged that the defendants violated New Jersey state law by

engaging in a fraudulent scheme and conspiracy to market and sell

cancer, inhalant and miscellaneous other drugs at inflated

prices. Defendant AstraZeneca, one of the named pharmaceutical

company defendants, removed the case to federal district court,
asserting that ERISA's civil enforcement provision, 29 U.S.C.
§ 1132, completely preempted Local 68's state-law claims and that
the state law claims required the resolution of substantial
federal questions. Local 68 filed a motion to remand pursuant to
28 U.S.C. § 1447, alleging that AstraZeneca violated the rule of
unanimity by removing without the consent of the physician
defendants. Local 68 also disagreed that there was subject
matter jurisdiction over the state law claims. AstraZeneca
opposed the motion on the ground that Local 68 fraudulently
joined and improperly served the physicians. Local 68 not only
disagreed with AstraZeneca's opposition but also argued that
AstraZeneca made material misrepresentations in the removal
petition when it indicated that the physicians would consent to
removal.

After hearing and review of the briefs, Plaintiff's motion
to remand is **ALLOWED**.

## II. BACKGROUND

This action arises out of the alleged fraudulent scheme by
the pharmaceutical company defendants to inflate the prices of
drugs by misstating the "Average Wholesale Price" ("AWP") of
their drugs in industry publications. These allegations have
engendered an enormous class action suit and multi-district
litigation in this Court. This Court has fully outlined these

2

allegations in earlier orders. See, e.g., In re Pharm. Indus. Average Wholesale Price Litig., 230 F.R.D. 61 (D. Mass. 2005); Montana v. Abbot Labs., 266 F. Supp. 2d 250 (D. Mass. 2003).  The particular facts, which are not in dispute except where noted, and procedural history of this action follow.

## A.    Commencement of Action and Service of Process

Local 68 filed a five-count class action complaint in the Superior Court of New Jersey on June 30, 2003, asserting only state law claims.[1]  The complaint named as defendants fifty-five pharmaceutical companies and three licensed physicians specializing in urology.  Two of the physician defendants, Saad Antoun, M.D. ("Antoun") and Stanley C. Hopkins, M.D. ("Hopkins"), pled guilty to federal criminal charges in connection with billing patients for free samples of Zoladex received from AstraZeneca.  The third physician defendant, Robert A. Berkman, M.D. ("Berkman"), was charged with the same conduct.

On June 30, 2003, Local 68 sent the complaint and summons via Federal Express to counsel for AstraZeneca and counsel for Antoun.  On the same day, Local 68 mailed the complaint and

_____

[1] The complaint alleges five claims under New Jersey state law, including unjust enrichment (Count I), fraud (Count II), civil conspiracy (Count III), concert of action (Count IV), and violation of the New Jersey Consumer Fraud Act, N.J. Stat. § 56:8-1 (Count V).  The complaint states that "Plaintiff and the Class it seeks to represent make no claim under any federal law, including ERISA and Medicare, and expressly disavow any right to recover under any federal law . . . ."  (Compl. 2.)

3

summons via certified U.S. mail to the respective attorneys of the other defendants.  (See Fowler Decl. Ex. 2, May 6, 2005.)

On July 1, 2003, AstraZeneca's counsel received the summons and complaint.  (AstraZeneca Supp. Mem. 2-3.)  Antoun's counsel asserts that he "accepted service of the Class Action Complaint on behalf of his client, defendant, Saad Antoun, M.D., via Federal Express overnight delivery, on July 1, 2003."  (Antoun Joinder ¶ 2.)  Hopkins's counsel also asserts that he "accepted service of the Class Action Complaint on behalf of his client, defendant, Stanley C. Hopkins, M.D., on July 3, 2003."  (Hopkins Joinder ¶ 3.)  Berkman's counsel, however, asserts that he "would not accept" and "never accepted service of the summons and complaint in the New Jersey Action on behalf of Dr. Berkman." (Fowler Decl. Ex. 1 ¶ 3, Dec. 28, 2005.)

## B.    Removal

On July 3, 2003, the notice of removal was drafted under the supervision of D. Scott Wise, a member of the law firm Davis Polk & Wardwell and counsel to Defendant AstraZeneca.  At Wise's request and based on his representations, David J. Cooner, AstraZeneca's New Jersey counsel, signed and filed the notice of removal in the federal district court for the District of New Jersey that same day.  (Wise Decl. ¶¶ 1-2, Sept. 19, 2005.)  The notice was timely.  AstraZeneca based the notice of removal on federal question jurisdiction, asserting that ERISA completely

4

preempted Local 68's state law claims and that the claims
required the resolution of substantial federal questions.
(Removal Notice ¶ 10.) With regard to the consent of defendants
required for removal, the notice stated:

> Consent to removal is required only for served
> defendants. AstraZeneca has conducted a reasonably
> diligent inquiry, and based on this investigation,
> is informed and believes that, as of the date of
> this Notice, none of the other named defendants has
> been serve [sic] with the Class Action Complaint.
> <u>Counsel for AstraZeneca is further informed and
> believes, based on this investigation, that all
> defendants will consent to this removal and will
> join herein following the service of process</u>.

(<u>Id.</u> ¶ 19 (emphasis added).)

On July 9, 2003, Local 68 moved to remand the case to state
court on the grounds that AstraZeneca violated the rule of
unanimity requiring all defendants to consent timely to removal,
that Local 68's state law claims were not preempted by ERISA, and
that Local 68 explicitly disavowed any claims under federal law.
(Remand Mot. 2.) On July 16, 2003, Berkman filed a letter
stating that he "does not consent to the jurisdiction of the
federal court in this case" and instead, "desires to have this
case proceed in New Jersey State Court." (Sherman Letter, July
16, 2003.) On July 18, 2003, Antoun joined in Local 68's motion
to remand and in the alternative, moved separately to remand.
(Antoun Joinder.)

On July 21, 2003, the district court for the District of New
Jersey denied the motion to remand without prejudice to

5

reconsideration by the MDL court.   (See Hr'g Mins., July 21,
2003; Hr'g Tr. 44-46, July 21, 2003.)   On August 4, 2003, Hopkins
also joined in Local 68's motion to remand and in the
alternative, moved separately to remand.   (Hopkins Joinder.)

## C.   **Proceedings in this Court**

On December 3, 2003, the Judicial Panel on Multi-District
Litigation ordered that the case be transferred to this Court for
inclusion in the Pharmaceutical Industry Average Wholesale Price
Litigation, M.D.L. No. 1456.   This Court received the case on
July 2, 2004.

On November 23, 2004, the Court issued a procedural order
stating that:

> The Court orders that parties in cases transferred
> into this multi-district litigation shall inform
> the Court whether they are pressing any pending
> motions, and if so, shall file supplemental
> briefing on pending motions in light of the former
> orders. Failure to comply with this Order by
> December 22, 2004 will result in denial of the
> motions.

(Procedural Order, Nov. 23, 2004.)   No parties in this case
responded to this procedural order until Local 68 renewed its
motion to remand in 2005.

This Court ordered supplemental briefing, which Plaintiff
Local 68 and Defendant AstraZeneca submitted.   After reviewing
these, this Court issued an Order on August 19, 2005 requiring
counsel for AstraZeneca to "submit an affidavit explaining the
factual basis for its statement in the notice [of removal] that

6

'all defendants will consent to this removal and join herein following the service of process'" and limiting discovery to sixty days on the claim that Local 68 fraudulently joined the physician defendants. (Mem. & Order, Aug. 19, 2005.) Local 68 and AstraZeneca subsequently submitted additional briefs. The Court held a hearing on January 27, 2006, after which the parties submitted more briefs. In this last round of submissions, Local 68 moved for attorneys' fees and costs expended in connection with the removal pursuant to 28 U.S.C. § 1447(c) or in the alternative, to Fed. R. Civ. P. 11.

1.    Alleged Basis for Defendant AstraZeneca's Statement in Notice of Removal

On September 19, 2005, AstraZeneca submitted three declarations in response to the Court's Order of August 19, 2005, requiring counsel to "submit an affidavit explaining the factual basis for its statement in the notice [of removal] that 'all defendants will consent to this removal and join herein following the service of process.'"

On July 3, 2003, Wise, member of Davis Polk & Wardwell and AstraZeneca's counsel, sent an e-mail to all other named defendant pharmaceutical companies to determine whether any defendant had been served. (Wise Decl. ¶¶ 1, 5(b), Sept. 19, 2005.) "[M]any defendants indicated in their responsive e-mails not only that they had not been served, but also that they would consent to removal if served." (Id. ¶ 5(b).)

7

> Those corporate defendants that did not expressly indicate their consent to removal of this case in response to my e-mail had previously consented to removal in virtually identical AWP-related cases. Accordingly, on July 3, 2003, [Wise] believed, based on these e-mail communications and the prior practice of these same corporate defendants in virtually identical cases, that all corporate defendants would consent to removal and join in the Notice of Removal once served.

(Id. ¶ 5(c).)

Regarding the individual physician defendants, Wise attempted to reach Antoun's counsel on the same day. "After several attempts, [Wise] was informed that Dr. Antoun's counsel, Mr. Mustokoff, was unreachable, because he was on trial." (Id. ¶ 5(f).) Also on July 3, 2003, one of Wise's associates spoke with Berkman's attorney and separately with Hopkins's attorney. Neither attorney believed that his respective client had been served. (Gill Decl. ¶¶ 3, 5.) Wise's associate informed both attorneys that AstraZeneca intended to remove the case to federal court. Neither attorney responded. (Id. ¶¶ 4, 6.) Significantly, at no time did AstraZeneca ask for or receive Antoun's, Berkman's or Hopkins's consent to remove. (See id.; Wise Decl. ¶ 5(f), Sept. 19, 2005.)

Wise now states he believed that "all three individual defendants would conclude that removal and transfer to the MDL would be in their interest." (Id. ¶ 5(h).)

> Under the Court's orders governing the MDL proceeding, we believed that removal and transfer of this action to the AWP MDL would likely minimize

> the chances that the case would be actively
> prosecuted against them. . . . Thus, we concluded
> that the individual defendants would likely see it
> in their interest to consent to removal.

(Id.)

> While it is true that, in two other AWP-related
> cases filed by Plaintiffs' counsel, certain
> individual defendants refused to consent to removal
> and then settled with Plaintiffs' counsel for no
> apparent consideration other than cooperation, in
> both of those cases the same group of individual
> defendants had been named, and Drs. Antoun,
> Berkman, and Hopkins were not among that group of
> individual defendants.

(Id. ¶ 5(j).)

Wise asserts that "based on the facts and circumstances
described," he had a "good faith belief that all defendants would
consent to removal once served." (Id. ¶ 7.)

### 2.    Alleged Fraudulent Joinder of Physician Defendants

AstraZeneca submitted the following evidence to support its
claim that Local 68 fraudulently joined the three physicians as
defendants.

Sometime in June 2003, Local 68's counsel sent Antoun's
counsel a proposed memorandum of understanding outlining the
terms of a proposed settlement. (Fowler Decl. Ex. 2 ¶ 8, Dec.
28, 2005.) Antoun's counsel knew that its terms were "clearly
unacceptable to Dr. Antoun"; plaintiff's counsel and Antoun's
counsel "agreed that any chance of resolving the matter at that
early stage in the proceeding was premature, and thus discussions
regarding settlement discussions ceased." (Id. ¶¶ 8-9.) There

9

was no language contained in the proposed memorandum of

understanding regarding removal or consent to removal.  (See id.

Ex. 3.)

Similarly, Local 68's counsel and Hopkins's counsel had a

discussion on June 30, 2003.  (Fowler Decl. Ex. 2 ¶ 3, Feb. 10,

2006.)

> The substance of this discussion was that my
> client's opportunity to settle the case quickly and
> without burdensome attorney's fees might be lost if
> the case were to be subsumed into a federal action
> pending in Boston.  He predicted that AstraZeneca
> would ask Dr. Hopkins to stipulate to removal and
> that, if the case were removed, another set of
> plaintiff's attorneys would then be in charge of
> the claims against Dr. Hopkins and the terms and
> timing of any settlement.

(Id.)  On July 1, 2003, Local 68's counsel sent Hopkins's counsel

a proposed memorandum of understanding outlining the terms of a

proposed settlement.  (Id.)  Again, there was no language

regarding removal or consent to removal.  (See Haviland Aff. Ex.

L, Feb. 10, 2006.)  However, Local 68's counsel did state both

orally and by email to Hopkins's counsel that "if this case goes

to federal court, all bets are off as any control we now have

over the litigation will be lost."  (Fowler Decl. Ex. 2 ¶ 4, Feb.

10, 2006.)

On July 8, 2003, Local 68's counsel faxed to the attorneys

representing Antoun, Berkman and Hopkins letters stating:

> Per our telephone conversation this afternoon, and
> our discussion about the need for you and counsel
> for the other doctor-defendants to determine

10

> whether or not to consent to federal court
> jurisdiction in this case, the following is
> language we would propose to be put in a letter to
> the federal court and plaintiff's counsel
> indicating your lack of consent to federal
> jurisdiction. . . .

(Fowler Decl. Ex. 4, Dec. 28, 2005.)

"On or several days prior to July 9, 2003," Local 68's

counsel had a telephone conversation with Berkman's counsel.

During the conversation:

> [Plaintiff's counsel] informed [Berkman's counsel]
> that plaintiffs were not interested in Dr. Berkman
> as a defendant in the New Jersey Action, but
> instead as a fact witness. [Plaintiff's counsel]
> told [Berkman's counsel] that the action had been
> filed in New Jersey state court and that plaintiffs
> were interested in keeping the case in state court.
> [Plaintiff's counsel] suggested that it would be in
> Dr. Berkman's best interest for the case to remain
> in state court in New Jersey.

(Id. Ex. 1 ¶¶ 3-4.)

Lastly, Local 68's counsel settled with individual

defendants in other AWP-related cases. (See, e.g., id. Ex. 14.)

There was no language contained in those settlement agreements,

however, regarding removal or consent to removal. (See id.)

There have been no settlement agreements executed with any

of the physician defendants in this case.

## III.  DISCUSSION

A district court must have subject matter jurisdiction in

order for the removed case to remain in federal court. See 28

U.S.C. §§ 1441(a), 1447(c). The right to remove is "to be

11

determined according to the plaintiff's pleading at the time of the petition for removal." Pullman Co. v. Jenkins, 305 U.S. 534, 537 (1939). A party seeking to remove a case to federal court has the burden of demonstrating the existence of federal jurisdiction. See, e.g., BIW Deceived v. Local S6, 132 F.3d 824, 831 (1st Cir. 1997). Furthermore, the removal statute should be strictly construed, and any doubts about the propriety of removal should be resolved against the removal of an action. See, e.g., Danca v. Private Health Care Sys., Inc., 185 F.3d 1, 4 (1st Cir. 1999).

This Court is bound by First Circuit precedent in adjudicating transferred multi-district cases. See, e.g., In re TMJ Implants Prods. Liab. Litig., 97 F.3d 1050, 1055 (8th Cir. 1996) ("When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located."); Newton v. Thomason, 22 F.3d 1455, 1460 (9th Cir. 1994) (same); Menowitz v. Brown, 991 F.2d 36, 40-41 (2d Cir. 1993) (same); In re Korean Air Lines Disaster of Sept. 1, 1983, 829 F.2d 1171, 1176 (D.C. Cir. 1987) (same).

## A.   The Rule of Unanimity

Plaintiff Local 68 argues that the action was improperly removed because the three physician defendants did not consent to removal in contravention of the rule of unanimity. The rule of unanimity in removal requires that "[i]n cases involving multiple

12

defendants, all defendants who have been served must join or assent in the removal petition." In re Pharm. Indus. Average Wholesale Price Litig., 307 F. Supp. 2d 190, 193 (D. Mass. 2004) (citing Montana, 266 F. Supp. 2d at 260 (citing Lapides v. Bd. of Regents of the Univ. Sys. of Ga., 535 U.S. 613, 620 (2002))). Defendant AstraZeneca responds that the consent of the physician defendants was not necessary because Plaintiff Local 68 fraudulently joined and improperly served the physicians.

1.   Fraudulent Joinder

As developed in the caselaw, the doctrine of fraudulent joinder provides an exception to the requirement of complete diversity when a plaintiff joins a non-diverse defendant in bad faith in order to defeat removal. See Mills v. Allegiance Healthcare Corp., 178 F. Supp. 2d 1, 4 (D. Mass. 2001) (citing Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 98 (1921); Chesapeake & Ohio Ry. v. Cockrell, 232 U.S. 146, 153 (1914)); see also 14B Wright, Miller & Cooper, Federal Practice & Procedure § 3723 (3d ed. 1998). The fraudulent joinder doctrine polices a plaintiff's abusive use of joinder to prevent a defendant's statutory right of removal to federal courts. See Wilson, 257 U.S. at 97 ("[T]his right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy." (citations omitted)); Smallwood v. Ill. Cent. R.R. Co., 385 F.3d 568, 573 (5th Cir.

13

2004) (en banc) ("[T]he Federal courts should not sanction

devices intended to prevent the removal to a Federal court where

one has that right, and should be equally vigilant to protect the

right to proceed in the Federal court as to permit the state

courts, in proper cases, to retain their own jurisdiction."

(quotations and citations omitted)); 14B Wright, Miller & Cooper,

Federal Practice & Procedure, supra, at § 3723 ("This fraudulent-

joinder doctrine tries to strike a reasonable balance among not

rewarding abusive pleading by the plaintiff, the plaintiff's

tactical prerogative to select the forum, and the defendant's

statutory right to remove."). When a plaintiff fraudulently

joins a defendant to destroy removability, a federal court may

ignore the lack of consent from that defendant and permit the

removal of the case. See In re Diet Drugs, 220 F. Supp. 2d 414,

422 (E.D. Pa. 2002) (ignoring lack of consent from fraudulently

joined defendants).

    In the context of removal based on diversity jurisdiction,

the Second Circuit has articulated a disjunctive test:

> In order to show that naming a non-diverse
> defendant is a "fraudulent joinder" effected to
> defeat diversity, the defendant must demonstrate,
> by clear and convincing evidence, either that there
> has been outright fraud committed in the
> plaintiff's pleadings, or that there is no
> possibility, based on the pleadings, that the
> plaintiff can state a cause of action against the
> non-diverse defendant in state court.

Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 207 (2d Cir.

2001). Other circuits have similar disjunctive tests. See
Smallwood, 385 F.3d at 573 (5th Cir. 2004) (en banc) (actual
fraud in pleading or inability to establish cause of action
against non-diverse party); Mayes v. Rapoport, 198 F.3d 457, 464
(4th Cir. 1999) (outright fraud in pleading or no possibility to
establish cause of action against in-state defendant); Triggs v.
John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998)
(same); Hoosier Energy Rural Elec. Coop., Inc. v. Amoco Tax
Leasing IV Corp., 34 F.3d 1310, 1315 (7th Cir. 1994) (same);
Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990)
(no real good faith intention to prosecute joined defendant or no
reasonable basis in fact or colorable ground supporting claim).

Therefore, in order to establish fraudulent joinder, a
removing defendant must establish that a plaintiff either (1) has
committed fraud or (2) cannot establish the possibility of a
cause of action against the joined party. The latter defines
"fraudulent joinder" as a "term of art that does not necessarily
reflect on the integrity of plaintiff or plaintiff's counsel."
Simpson v. Union Pac. R.R. Co., 282 F. Supp. 2d 1151, 1154-55
(N.D. Cal. 2003) (citations omitted).

### a.    Applicability to Removal Based on Federal Question Jurisdiction

As a threshold question, the Court must determine whether
the fraudulent joinder doctrine applies in cases removed on the
basis of federal question jurisdiction.

As many courts have held, the rationale for the doctrine of fraudulent joinder applies with equal force in the context of removal based on federal question jurisdiction. See, e.g., McKay v. Boyd Constr. Co., Inc., 769 F.2d 1084, 1087 (5th Cir. 1985) (allowing removal because claims against state entities, which would have precluded federal jurisdiction under Eleventh Amendment before Wis. Dep't of Corr. v. Schacht, 524 U.S. 381 (1998), were baseless), abrogated on other grounds by Schacht, 524 U.S. at 383-93; Simpson, 282 F. Supp. 2d at 1155-56 (reviewing caselaw applying fraudulent joinder doctrine to removal based on federal question); Hesni v. Williams & Boshea, L.L.C., 2002 WL 373273, *1, *3-5 (E.D. La. 2002) (applying doctrine to federal question context to determine whether unanimous consent necessary to remove, but finding no fraudulent joinder because possible claim against all joined defendants). Accordingly, the Court will examine whether Local 68 fraudulently joined the physician defendants to determine whether their consent to removal was necessary.

### b. Preservation of Claim

Local 68 argues that AstraZeneca did not preserve the claim of fraudulent joinder in its notice of removal. "[T]here is no question that the notice must make the basis for the federal court's exercise of removal jurisdiction clear and contain enough information so that the district judge can determine whether

16

removal jurisdiction exists." 14C Wright, Miller & Cooper, Federal Practice & Procedure, supra, at § 3733. "A claim that the plaintiff has engaged in fraudulent joinder must be asserted with particularity by the party seeking removal." Id. § 3723. Therefore, many courts in the diversity context have found the claim of fraudulent joinder waived if not pled in the notice of removal. See, e.g., Tincher v. Ins. Co. of Pa., 268 F. Supp. 2d 666, 667 (E.D. Va. 2003) (remanding and refusing to consider claim of fraudulent joinder not pled in removal notice).

In the diversity context, it makes sense to require a removing party to state with particularity the basis for the invocation of the doctrine of fraudulent joinder so that a court can assess the predicate for the assertion of diversity jurisdiction where the face of the complaint would otherwise suggest the existence of non-diverse parties. Here, however, AstraZeneca asserted federal question jurisdiction as the basis for removal and alleged it believed in good faith after investigation that all parties would consent. AstraZeneca's claim of fraudulent joinder became necessary to determining removal jurisdiction only after Local 68 moved to remand based on the rule of unanimity and after Antoun and Hopkins joined in Local 68's motion. AstraZeneca subsequently asserted the claim of fraudulent joinder with particularity. Accordingly, in these circumstances, AstraZeneca did not waive the issue of fraudulent

17

joinder in the removal notice.[2]  Cf. Whitaker, 261 F.3d at 205
(finding removing defendant's argument that removability could
not be ascertained from face of summons not barred where argument
became relevant only in response to plaintiff's timeliness
objection and removal notice asserted proper basis of removal).

     c.   Evaluation of Case

Here, AstraZeneca asserts that the Court may find fraudulent
joinder under either the fraud or the "no possible cause of
action" prong.

First, under the fraud prong, AstraZeneca asserts that Local
68 has been acting cooperatively with the physician defendants
and lacks a good faith intention to proceed against them to a
joint judgment.  The In re Diet Drugs court found fraudulent
joinder where the removing defendant provided credible direct and
significant circumstantial evidence that the plaintiffs' counsel
and the joined defendants reached agreements throughout the
country whereby the plaintiffs would ultimately dismiss the
defendants in exchange for their refusal to consent to removal.
220 F. Supp. 2d. at 421-22.

It is true that Local 68 tried to persuade the physician

---

[2] The Court's later findings regarding AstraZeneca's
material misrepresentation constitute an independent basis for
remand.  I do not address the situation where a defendant has
knowledge of a fraudulent joinder prior to removal, intends to
use fraudulent joinder to explain why the rule of unanimity is
inapplicable, but fails to plead fraudulent joinder in the
removal notice.

defendants to refuse to consent. Before the notice of removal, Local 68's counsel sent Antoun's counsel and Hopkins's counsel a proposed memorandum of understanding; discouraged Hopkins's counsel from letting this case get sucked into the vortex of federal MDL jurisdiction; and proposed language opposing removal, which Berkman's attorney used in his July 16, 2003 letter to the district court for the District of New Jersey.

However, these efforts, without more, do not render this joinder fraudulent. One substantial motivation for filing suit appears to have been procuring the cooperation of the physicians. For example, Local 68's counsel informed Berkman's counsel that plaintiffs were not interested in Dr. Berkman as a defendant but instead as a fact witness. While the proposed memoranda of understanding made no mention of removal or consent to removal, it did contain provisions requiring the physicians to provide full and complete discovery without formal demands and to attend trial voluntarily. Therefore, the Court finds that AstraZeneca has not presented "clear and convincing" evidence of fraud or collusion in the joinder of the physicians solely to prevent removal.

Second, under the "no possible cause of action" prong, AstraZeneca asserts that there is no reasonable basis in fact upon which recovery can be granted against the physician defendants because there are no allegations in the complaint

19

establishing (a) personal jurisdiction over two of the three
physicians or (b) Local 68's standing to sue the physicians.  The
argument regarding personal jurisdiction fails immediately.
Assuming arguendo that the New Jersey state court had no personal
jurisdiction over two of the physicians, AstraZeneca does not
dispute that one of the non-consenting physicians, Antoun, is a
resident of and has offices located in New Jersey.  (Compl.
¶ 94.)  Moreover, "personal jurisdiction is an individual liberty
right and is therefore waivable," and neither of the other two
physician defendants, Berkman and Hopkins, have moved to dismiss
based on personal jurisdiction.  McBee v. Delica Co., Ltd., 417
F.3d 107, 127 (1st Cir. 2005) (citation omitted); see also
Seguros Comercial Am. v. Am. President Lines, Ltd., 934 F. Supp.
243, 245 (S.D. Tex. 1996) (holding that removing defendant could
not establish fraudulent joinder based on waivable defenses of
lack of personal jurisdiction or defects in service of process
available only to joined defendants).

     AstraZeneca's argument regarding standing asserts that Local
68's allegation that it paid for Zoladex is insufficient to
confer standing against the three physician defendants in the
absence of an allegation of direct injury caused by them.  To
prove fraudulent joinder, AstraZeneca must demonstrate "by clear
and convincing evidence . . . that there is no possibility,
based on the pleadings, that the plaintiff" has standing against

the physicians. Whitaker, 178 F. Supp. 2d at 207. In evaluating

a fraudulent joinder claim, the Court "must assume as true all

factual allegations in the complaint" and "resolve any

uncertainties as to the current state of controlling substantive

law in favor of the plaintiff." Batoff v. State Farm Insurance

Co., 977 F.2d 848, 851 (3d Cir. 1992) (quotations and citations

omitted). As the Third Circuit summarized:

> [T]he inquiry into the validity of a complaint
> triggered by a motion to dismiss under Rule
> 12(b)(6) is more searching than that permissible
> when a party makes a claim of fraudulent joinder.
> Therefore, it is possible that a party is not
> fraudulently joined, but that the claim against
> that party ultimately is dismissed for failure to
> state a claim upon which relief may be granted.

Id. at 852.

"'[I]njury-in-fact' must involve 'an invasion of a

legally-protected interest which is (a) concrete and

particularized; and (b) actual or imminent, not conjectural or

hypothetical.'" Sea Shore Corp. v. Sullivan, 158 F.3d 51, 55

(1st Cir. 1998) (quoting Lujan v. Defenders of Wildlife, 504 U.S.

555, 560 (1992)). In this case, the complaint alleges that

AstraZeneca and the named physician defendants participated in a

fraudulent conspiracy to charge Local 68 for free samples of

Zoladex (id. ¶¶ 114-16, 137(j), 142, 146-48) and that the

conspiracy damaged Local 68. Because at least one of the non-

consenting physician defendants, Antoun, resides and practices in

New Jersey, this claim is possible.

21

Accordingly, AstraZeneca's argument that Local 68 fraudulently joined the physician defendants lacks merit.

2.  Service of Process

The next issue is service of process.  AstraZeneca asserts that only the defendants who Local 68 served properly need to consent to removal under the rule of unanimity.

The rule of unanimity requires that "[i]n cases involving multiple defendants, all defendants who have been served must join or assent in the removal petition." In re Pharmaceutical Indus. Average Wholesale Price Litig., 307 F. Supp. 2d at 193 (citation omitted).

Courts disagree, however, on whether the rule of unanimity requires the consent of defendants who have not been served. Many courts hold that "[a] defendant may remove a case without joinder of a non-served" defendant. Miranti v. Lee, 3 F.3d 925, 929 (5th Cir. 1993); see Novick v. Bankers Life Ins. Co. of New York, 410 F. Supp. 2d 98, 100 (E.D.N.Y. 2006) (finding it well-recognized that "rule of unanimity is excused where (1) the non-joining defendants have not been served with service of process at the time the removal petition is filed" (quotations and citation omitted)); see generally 14C Wright, Miller & Cooper, Federal Practice & Procedure, supra, at § 3731 n.26. While this may appear to be unfair to the non-served defendants and encourage a sprint to the courthouse before a non-served

22

defendant has the chance to object, "if a removal petition is filed by a served defendant and another defendant is served after the case is thus removed, the latter defendant may still either accept the removal or exercise its right to choose the state forum by making a motion to remand" under 28 U.S.C. § 1448. Getty Oil Corp. v. Ins. Co. of N. Am., 841 F.2d 1254, 1263 (5th Cir 1988). On the other hand, relying on the language "through service or otherwise" in 28 U.S.C. § 1446(b), some district courts have held that the unanimity requirement applies to defendants who, although not served, actually receive a copy of the complaint before the notice of removal is filed. See, e.g., Schwartz v. FHP Int'l Corp., 947 F. Supp. 1354, 1363-64 (D. Ariz. 1996); Teitelbaum v. Soloski, 843 F. Supp. 614, 615 (C.D. Cal. 1994).

Here, the question is not lack of service but improper service. That is, must a removing defendant get the consent of an improperly served defendant? "In determining the validity of service prior to removal, a federal court must apply the law of the state under which the service was made." Romo v. Gulf Stream Coach, Inc., 250 F.3d 1119, 1122 (7th Cir. 2001) (quotations and citation omitted). The parties agree that New Jersey law applies in this case.

Plaintiff Local 68 asserts that it effected service of process on the physician defendants prior to the notice of

removal under N.J. Ct. R. 4:4-4(c) which provides:

> Optional Mailed Service.  Where personal service is
> required to be made pursuant to paragraph (a) of
> this rule, service, in lieu of personal service,
> may be made by registered, certified or ordinary
> mail, provided, however, that such service shall be
> effective for obtaining in personam jurisdiction
> only if the defendant answers the complaint or
> otherwise appears in response thereto, and provided
> further that default shall not be entered against a
> defendant who fails to answer or appear in response
> thereto.

N.J. Ct. R. 4:4-4(c).[3]  AstraZeneca argues that the service was

not effective until the physician defendants answered the

complaint or "otherwise appear[ed] in response thereto."  Id.

While service may not be "effective" under New Jersey law for

purposes of obtaining in personam jurisdiction over a party for

procuring entry of a default until an answer or appearance, that

provision does not govern when service is "effective" for

purposes of triggering the consent requirement of the rule of

unanimity.

AstraZeneca also asserts that service was defective under

N.J. Ct. R. 4:4-4(c) because Local 68 mailed the complaint to the

attorneys of the physician defendants rather than directly to the

_____

[3] AstraZeneca asserts that Local 68 did not meet the
requirements of N.J. Ct. R. 4:4-4(b)(1)(C), such as evidencing
diligent effort and inquiry into personal service.  AstraZeneca,
however, conflates the requirements of two separate service
provisions of New Jersey state law.  See Citibank, N.A. v. Russo,
334 N.J. Super. 346, 351-52, 759 A.2d 865, 868 (N.J. Super. Ct.
App. Div. 2000) (holding that requirements of N.J. Ct. R. 4:4-
4(c) do not apply to service authorized by N.J. Ct. R. 4:4-
4(b)(1)(C)).

24

physician defendants. In <u>Zacharias v. Whatman P.L.C.</u>, 345 N.J.
Super. 218, 784 A.2d 741 (N.J. Super. Ct. App. Div. 2001),
however, "service complied with the optional mail service
alternative for serving initial process afforded by R. 4:4-4(c)"
where the "complaint, together with a summons addressed to all
party defendants, was mailed to Whatman's attorney." <u>Id.</u> at 222,
225, 784 A.2d at 743, 745. Even if service were defective or not
complete under New Jersey law, the consent of the physicians was
necessary unless they challenged the service. As two district
courts held:

> Defects concerning service of process are waivable.
> <u>See</u> Fed. R. Civ. P. 12(h)(1). In addition, the
> right to waive these defects are personal to the
> party upon whom service of process is attempted.
> Thus, [removing defendant] cannot complain about
> any alleged deficiencies about service of process
> on [non-consenting defendant], and [removing
> defendant]'s objections to service of process on
> [non-consenting defendant] are not grounds for
> failing to secure [non-consenting defendant]'s
> joinder in the removal notice.

<u>Seguros</u>, 934 F. Supp. at 245 (citing <u>Hess v. Great Atl. & Pac.</u>
<u>Tea Co., Inc.</u>, 520 F. Supp. 373, 376 (N.D. Ill. 1981)).

Indeed, some courts have held that consent of the physician
defendants was arguably necessary because they "actually received
a copy of the complaint prior to the date the notice of removal
had been filed." <u>Schwartz</u>, 947 F. Supp. at 1363-64; <u>Teitelbaum</u>,
843 F. Supp. at 615. Therefore, AstraZeneca's argument that the
Court should ignore the physician defendants for purposes of the

25

rule of unanimity because of defective service of process fails.

Since AstraZeneca's argument regarding fraudulent joinder also lacks merit, the consent of the physician defendants was necessary. Antoun and Hopkins objected to removal in their respective joinder pleadings, Berkman objected similarly in a letter, and as discussed in the next section, AstraZeneca did not obtain the consent of any of the physician defendants prior to filing the notice of removal. Accordingly, AstraZeneca violated the rule of unanimity, and remand is appropriate.

## B. **Misrepresentation in the Removal Pleading**

Plaintiff Local 68 asserts that Defendant AstraZeneca deliberately or negligently made a false statement in the notice of removal regarding the consent of the other defendants. AstraZeneca responds that it had a good faith belief that all defendants would consent to removal once served.

"A defendant or defendants desiring to remove any civil action or criminal prosecution from a State court shall file in the district court of the United States . . . a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure." 28 U.S.C. § 1446(a). Rule 11 requires, inter alia, "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that "factual contentions have evidentiary support." Fed. R. Civ. P. 11(b). If a Rule 11 violation occurs, "the court may . . .

26

impose an appropriate sanction upon the attorneys, law firms, or parties."  Fed. R. Civ. P. 11(c); see also Young v. City of Providence, 404 F.3d 33, 38 (1st Cir. 2005) (applying abuse of discretion standard of review).  The Sixth Circuit has stated that where a removal petition misrepresents a defendant's consent, it is "within the district court's power to impose appropriate sanctions, including a remand to state court."  Harper v. AutoAlliance Int'l, Inc., 392 F.3d 195, 202 (6th Cir. 2004).  Therefore, while failure of all served defendants to consent to removal constitutes grounds for remand under the rule of unanimity, see, e.g., Montana, 266 F. Supp. 2d at 260, it is also within a court's discretion to remand if the removing defendant makes a material misrepresentation regarding a defendant's consent under Harper, 392 F.3d at 202.

The factual contention at issue in this case is the following statement from the notice of removal: "Counsel for AstraZeneca is further informed and believes, based on this investigation, that all defendants will consent to this removal and will join herein following the service of process."  (Removal Notice ¶ 19.)  Based on Local 68's challenge to the statement and pursuant to Rule 11(c)(1)(B), this Court entered an order directing AstraZeneca to "submit an affidavit explaining the factual basis for" this statement.  (Mem. & Order 3-4, Aug. 19, 2005.)  AstraZeneca's counsel complied and submitted three

27

declarations detailing the investigation performed prior to the notice of removal.

After hearing and a review of the declarations, the Court finds that the statement at issue constitutes a material misrepresentation. AstraZeneca's entire investigation into whether the other fifty-four named defendants[4] would consent to remove began on July 3, 2003, which was the same day that AstraZeneca drafted and filed the notice of removal. (See Wise Decl. ¶¶ 2, 5, Sept. 19, 2005.) AstraZeneca's counsel spoke separately with the attorneys for Berkman and Hopkins and informed them of AstraZeneca's intention to remove. At no time during the conversations did AstraZeneca ask for or receive consent to remove from Berkman or Hopkins. (See id. ¶ 5(d), (e).) Moreover, AstraZeneca never spoke with Antoun's counsel, though several attempts were made, before filing the notice of removal. (Id. ¶ 5(f).) The three individual physician defendants were thus silent regarding the issue of consent.

AstraZeneca asserts that this silence, by negative inference, provided a good faith basis to remove, stating that "at no time prior to removal of this action on July 3, 2003 did [Berkman's counsel], [Hopkins's counsel] or [Antoun's counsel] inform counsel for AstraZeneca . . . that they objected to

---

[4] Four of the fifty-eight named defendants comprise Defendant AstraZeneca in this case: AstraZeneca PLC, AstraZeneca Pharmaceuticals LP, AstraZeneca LP, and Zeneca, Inc.

removal."  (See id. ¶¶ 5(i), 7.)  Also by negative inference,

AstraZeneca states:

> While it is true that, in two other AWP-related
> cases filed by Plaintiff's counsel, certain
> individual defendants refused to consent to removal
> and then settled with Plaintiffs' counsel for no
> apparent consideration other than cooperation, in
> both of those cases the same group of individual
> defendants had been named, and Drs. Antoun, Berkman
> and Hopkins were not among that group of individual
> defendants.  Accordingly, we had no reason to
> expect that these different individual defendants
> would object to removal.

(Id. ¶ 5(j).)

Based on this record, I conclude that AstraZeneca did not

have a reasonable basis to state a belief that "all defendants

will consent to this removal and will join herein following the

service of process."  (Notice of Removal ¶ 19 (emphasis added).)

Indeed, after hearing on Jan. 27, 2006, AstraZeneca agreed that

"the language could be read to suggest that doctor defendants had

told us affirmatively that they would consent to removal."

(Fowler Decl. Ex. 1 ¶ 4, Feb. 10, 2006.)

As a fallback, AstraZeneca asserts that such a

misrepresentation is not material to the present motion to

remand.  (Id. ¶ 5.)  Specifically, AstraZeneca points out that

consent of only the served defendants is required to remove and

that Local 68 had not properly executed service of process to the

physician defendants prior to the filing of the notice of

removal.  While AstraZeneca may have had a good faith argument

29

that service was not effective under New Jersey law for purposes
of removal or that service was otherwise defective, the legal
position was not a slamdunk.  Indeed, it is clear that
AstraZeneca must have believed that the issue of consent was
material or it would not have included the misstatement in the
notice of removal.

Accordingly, the Court finds that AstraZeneca made a
material misrepresentation in its notice of removal and that its
inquiry was not reasonable under the circumstances.  Remand is
appropriate on this ground as well.

### ORDER

The Court **ALLOWS** Plaintiff's motion to remand.  (Docket No.
1585.)

PATTI B. SARIS
United States District Judge